FILED

DEC 0 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Magistrate Case No.  08-MJ-692** |
| v. | : | |
| | : | |
| MARK T. ROSSINI , | : | VIOLATIONS:  18 U.S.C. § 1030(a)(2) |
| | : | (Computer Access |
| | : | Violation) |
| Defendant. | : | |

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Mark T. Rossini, under penalty of perjury, agrees and stipulates, to the following facts in connection with his plea of guilty to five counts of 18 U.S.C. §1030(a)(2) (Computer Access Violation).

### Background

At all times relevant to this offense the defendant, Mark T. Rossini ("Rossini") was employed by the Federal Bureau of Investigation ("FBI") as a Supervisory Special Agent.  The FBI is a federal law enforcement agency whose headquarters are located at 935 Pennsylvania Avenue, N.W., in the District of Columbia.  At all times relevant to this offense, the defendant was assigned to work out of the FBI Headquarters, and the New York City Office, located in New York, New York.   The defendant was employed by the FBI since July, 1991.  At all times relevant to this offense (between early January 2007 and July 2008), the defendant was involved in a close personal relationship with X, a female residing in the state of Connecticut.

### FBI Automated Case Support System

At all times relevant to this offense, the defendant was an employee of the FBI, who had been provided high-level security clearances, and was provided access to the FBI's Automated Case Support System (ACS), which contains confidential, law-enforcement sensitive

information that relates to historic and on-going criminal investigations initiated by, and supported by, the FBI. The ACS is only accessible by specific FBI employees, and it contains Secret and classified information, including FBI reports and the status of investigations. The ACS also permits FBI personnel to open, retrieve and search documents and case files, including the substance of reports completed by FBI agents as to their interviews of targets, witnesses, and confidential informants in their respective investigations. The ACS is text searchable, and can permit a user to view, download and print specific reports and documents. The FBI carefully limits access to the ACS, and ACS is accessible only through specific computer terminals in the FBI, and the system is protected by use of logins and passwords provided to authorized personnel. The FBI requires that all personnel routinely and regularly receive training on the proper use and access of computer information. Specifically, they are instructed and warned that ACS and FBI computer databases can only be used for official business purposes, and that information obtained from these systems cannot be shared with persons outside the FBI without prior approval. Whenever users access the ACS system they are reminded with a visual banner that warns them "This FBI system is for the sole use of authorized user for official business only." The FBI also requires that FBI agents acknowledge in their employment agreements that they are forbidden from releasing or conveying information obtained during employment to outside persons without prior approval from the FBI.

In 2005, the defendant re-signed his employment agreement with the FBI and acknowledged his responsibility as an FBI employee to refrain from releasing or conveying information outside the FBI. In this agreement the defendant acknowledged he could be subject to criminal prosecution if he violated this responsibility. Between 2005 and 2007, the defendant

2

also received annual computer training which included training on the proper rules of behavior for accessing FBI databases, and the limitations on use and dissemination of such information.

## Defendant's ACS Searches and Downloads

Between January 3, 2007 and July 30, 2007, the defendant made over 40 searches of the ACS for FBI information that were for purely personal purposes, and not connected to FBI business. Each of these searches exceeded the defendant's authorized use of the ACS system, and were not part of any of his assigned work. As part of these searches, the defendant obtained information to which he was not entitled. In some cases, the defendant also downloaded or printed FBI reports related to witnesses, confidential sources, and the progress of several criminal investigations and ongoing prosecutions, including the case of United States v. Anthony Pellicano, at the time an on-going criminal case that was actively being prosecuted in U.S. District Court for the Central District of California (Los Angeles). The defendant was not assigned to work on any of these cases, and he had no official reason to search the ACS for these records, or review these reports. By making these searches, and reviewing the result of these searches, the defendant obtained official and confidential information that he was not authorized to obtain. The defendant's improper searches of ACS were initially made from computers in the FBI Headquarters in the District of Columbia, and they continued when the defendant was relocated to the FBI New York Office in February 2007. Among the defendant's unauthorized searches and downloads from ACS include the following:

(1)     a search on January 19, 2007 of "Bert Fields and Proffer";

(2)     a search on January 26, 2007 of "Ovitz and Los Angeles" and the download of an FBI 302 report related to an interview of a confidential informant ("FBI 302 REPORT");

(3)     a search on February 14, 2007 of "James Wiatt and Los Angles";

3

(4)     a search on March 19, 2007 of the investigation file of a criminal investigation in San Diego related to a leak of information in the case of <u>United States v. Anthony Pellicano</u>; and

(5)     a search on July 5, 2007 of "Marty Singer Los Angeles" and "Michael Ovitz".

## FBI 302 REPORT

Sometime after downloading the FBI 302 REPORT on January 26, 2007, the defendant provided a copy of the report to X. X had a previous relationship with Anthony Pellicano. On or about February 14, 2007, X provided a copy of the FBI 302 REPORT to an attorney for Anthony Pellicano in San Francisco, California. The FBI 302 REPORT was filed by Mr. Pellicano's attorneys in March 2007 in <u>United States v. Anthony Pellicano</u>, CR 05-1046(C) (DSF), a criminal case pending at the time in the U.S. District Court for the Central District of California. Attorneys for Mr. Pellicano used the document to suggest to the court that the United States was improperly withholding exculpatory information from the defense in that case. Unbeknownst to Mr. Pellicano's attorneys, in November 2006 the judge in that case had previously ruled, *ex parte*, that the document was not exculpatory to Mr. Pellicano's defense.

At some point after the filing of the FBI 302 REPORT in the <u>Pellicano</u> case, but prior to February 25, 2008, the defendant learned that the FBI 302 REPORT had been used in the <u>Pellicano</u> case.

## Radar Online Article

On or about July 9, 2007, an online magazine "Radar Online" published a report relating to the defendant, and the government's prosecution of Anthony Pellicano. The defendant told his supervisors that the article was entirely false, when in fact that was not the case.

## Interview by Agents on February 25, 2008

Agents from the Department of Justice Office of Inspector General (OIG) interviewed the defendant on February 25, 2008, in the presence of his prior attorney.  The defendant falsely denied that he obtained FBI information without authorization, or that he provided any FBI information to outside persons.  He also denied transmitting the FBI 302 REPORT to any person outside the FBI.  He also failed to alert investigators that he had become aware that the FBI 302 REPORT he had downloaded had been provided to Mr. Pellicano's attorneys.  Among other false or misleading comments, the defendant stated that he did not share any FBI sensitive information with X or any other person; that had reviewed materials in the Pellicano case because agents in his assigned FBI section were interested in the case; and that the Radar Online article was entirely false.

Date: 12/08/08

_____
MARK T. ROSSINI
Defendant

I have read each of the five pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 12/08/08

_____
ADAM HOFFINGER, ESQUIRE
Attorney for the Defendant