UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 08-MJ-0692 (JMF) |
| | : | |
| v. | : | |
| | : | |
| MARK T. ROSSINI | : | |
| | : | Sentencing Date: May 14, 2009 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of probation for five years, subject to special conditions discussed below, and a fine of $10,000.

**I.    BACKGROUND**

On December 8, 2008, defendant Mark T. Rossini pled guilty to a five-count information that charged him with five individual counts of Criminal Computer Access, in violation of 18 U.S.C. §1030(a)(2)(B). Prior to resigning from his job as a condition of his guilty plea, the defendant had been employed as a Special Agent with the Federal Bureau of Investigation (FBI) for over 17 years. During his plea colloquy, the defendant admitted that at various times material to his offenses, that he was employed by the FBI as a Supervisory Special Agent, and that between January 2007 and July 2007, he made over 40 searches of the FBI's Automated Case Support System (ACS), which contains confidential, law-enforcement sensitive information that relates to historic and on-going criminal investigations initiated by, and supported by, the FBI. In some cases, the defendant also downloaded or printed FBI reports related to witnesses, confidential sources, and the progress of several criminal investigations and ongoing prosecutions. Access to ACS is strictly limited, and none of the defendant's searches were part

of his assigned work, and each of these searches exceeded the defendant's authorized use of the ACS system. As part of their training, all FBI agents, including the defendant, are trained and retrained annually on the responsible use of the ACS system, and possible penalties associated with misuse of the system.

Most of the defendant's improper searches related to the criminal case of <u>United States v. Anthony Pellicano</u> (<u>Pellicano</u> case), a criminal case that was actively being prosecuted in U.S. District Court for the Central District of California (Los Angeles). The defendant was never assigned to work on the <u>Pellicano</u> case, and he had no official reason to search the ACS for these records. By making these searches, and reviewing the result of these searches, the defendant obtained official and confidential information that he was not authorized to obtain. Each of the five counts to which the defendant has pled guilty relates to searches of the names of persons or materials related the <u>Pellicano</u> case.

In the most egregious instance, on January 26, 2007, the defendant improperly downloaded a copy of a confidential informant's FBI report that contained information related to the <u>Pellicano</u> matter. The defendant provided a copy of the report to X, a person with whom Rossini had a close personal relationship. X also had a previous relationship with Anthony Pellicano, and X provided a copy of the FBI report to an attorney for Anthony Pellicano in San Francisco, California. The FBI report was filed by Mr. Pellicano's attorneys in the <u>Pellicano</u> case, at which time they claimed that the United States was improperly withholding exculpatory information from the defense in that case. Unbeknownst to Mr. Pellicano's attorneys, in November 2006 the judge in the <u>Pellicano</u> case had previously ruled, *ex parte*, that the FBI report was not exculpatory to Mr. Pellicano's defense. However, disclosure of the FBI report

created additional media stories about the <u>Pellicano</u> case and caused the prosecutors and the Judge in the case to expend additional time, effort, and resources to respond to defense claims of government misconduct.

Despite news coverage of the defendant's possible connection the Pellicano case in July 2007, the defendant consistently informed his supervisors that those news stories were completely false. On February 25, 2008, the defendant was interviewed by agents from the DOJ Office of Inspector General, and he lied to these agents. Among his false statements, the defendant falsely denied that he obtained FBI information without authorization, or that he provided any FBI information to persons outside of the FBI, or to X.

## II.    SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below, numbered as they are in Section 3553(a).

A.  **The Court should consider the nature and circumstances of the offense**. Here, the defendant abused his position of trust as an FBI Supervisory Special Agent over a seven month period. In so doing, he intentionally violated the security clearances he had, and allowed persons outside the FBI to learn information about information provided by a confidential informant. His actions also potentially hurt an ongoing, high-profile criminal prosecution in California. While the disclosure of the classified 302 Report by the defendant did not adversely impact the final result of the <u>Pellicano</u> case (the defendant was found guilty), it caused government prosecutors to expend additional effort and resources to respond to defense motions which accused the government of misconduct. Further, the defendant lied to his superiors about

his conduct even after his relationship was publicly exposed by the news media, and to investigators from the Office of the Inspector General when he was confronted with specific evidence of his wrongdoing.

Aside from the downloading and disclosure of the FBI 302 Report, the government is unaware of any adverse effects on the Pellicano prosecution that resulted from the defendant's other ACS searches.  Further, the government has no information that the defendant knew or disclosed the name of the confidential informant in the FBI 302 Report in question.  The government also agrees that the defendant's ACS queries over a 7 month period were part of a common objective of obtaining information related to the Pellicano prosecution.

**The Court should also consider the history and characteristics of the defendant**. According to the Presentence Report ("PSR") the defendant has been able to obtain employment after resigning from the FBI (which was a condition of his plea agreement).  He also has had strong upbringing and was able to conform himself to the high standards of being an FBI Special Agent for many years.  Prior to the criminal offense at issue here, the government has no information that he has otherwise engaged in inappropriate or illegal conduct.  The government also does not dispute the PSR's conclusions relating to the defendant's mental and emotional health.  See PSR ¶¶ 39.  The government believes the defendant will be able to conform to all conditions (and special conditions) of probation that are outlined in his plea agreement.

(B)  **The Court should also consider the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence; (3) to protect the public; and (4) to provide defendant with appropriate education or vocational training**.  In this matter,

the offenses committed by the defendant were serious and done with full knowledge of their illegality. Protection of classified information in the ACS system is of paramount importance, and it is a lesson that all FBI agents are taught to observe. In part because of this seriousness, the defendant has pled guilty to five counts of Criminal Computer Access. The government believes the agreed upon special probationary conditions set forth in Attachment 1 will sufficiently guarantee that the defendant will abide by his ongoing responsibilities to maintain the integrity of classified information which he has acquired through his work as an FBI Special Agent. The PSR specifically acknowledges these conditions as well. See PSR ¶ 66.

The government acknowledges that the defendant is not a violent criminal, and that he has suffered significant public shame in having to resign his office in disgrace. The government believes that this fact, and a sentence of a five-year term of probation on all five counts, combined with the special conditions of probation which will limit his access to sensitive information, will properly punish the defendant, while also providing a sufficient deterrence against such violations by other government employees.

(C) **The Court should consider the kinds of sentences available**. The defendant pled guilty to five individual counts of Criminal Computer Access, in violation of 18 U.S.C. §1030(a)(2)(B). The maximum sentence for each count of Criminal Computer Access is one (1) year imprisonment, a fine of $100,000 (Class A Misdemeanor), or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $25 special assessment, a 1-year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made. The defendant is eligible for straight probation. See PSR ¶ 67.

(D)  **The Court should also consider the sentencing range established by the United States Sentencing Guidelines ("USSG")**.  As to these guidelines, the probation officer believes, and the Government concurs entirely, that the defendant's resulting Total Adjusted Offense Level for the offense is 8.

(E) **The Court should consider any pertinent policy statement issued by the Sentencing Commission**.  As discussed above, the government concurs with the guideline level calculation in this case, and sees no reason for departure or variance.

(F)  **Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records**.  Here, a sentence within the guidelines would help prevent such disparities between the defendant and similarly situated defendants.

(G) **Lastly, the Court should consider the need to provide restitution**.  In this matter, restitution is not an issue.  PSR ¶74.

### III.    SENTENCING GUIDELINE CALCULATIONS

The United States fully concurs with the PSR's conclusion about the applicable Guideline provisions in this case as they relate to the offense and criminal history levels.  As stated above, the United States believes that the defendant's federal guideline calculation is level 8.  Under the guidelines, the defendant may be sentenced to imprisonment from 0-6 months, and fined between $1,000 and $10,000.  See PSR ¶ 72.   The defendant is eligible for probation (Zone A).  The government and the defense have agreed that Sentencing Guideline § 3D1.2(b) is applicable as it relates to the grouping of the defendant's multiple offenses.  Under U.S.S.G. §3D1.2(b), the sentences for each count of the five counts of Criminal Computer Access should

run concurrently.

### III.  CONCLUSION

The defendant has engaged in a serious violation of the public trust.  As a result of admitting this violation, the defendant has already resigned from the FBI, and has suffered a significant and public fall from grace.  Taking into account all of these factors, the government feels that a sentence of five years probation, with the general conditions and the special conditions listed in Attachment 1, along with a $10,000 fine, is justified by the serious criminal conduct when measured against the defendant's contrition and admission of guilt.  The government believes that a such a sentence will serve the dual purposes of punishment and deterrence in this case, and it will also provide on-going scrutiny of the defendant if he should violate any of the special conditions of his probation.

    Respectfully submitted,

    JEFFREY A. TAYLOR
    UNITED STATES ATTORNEY


    _____/s/_____
    TEJPAL S. CHAWLA
    Assistant United States Attorney
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 514-7679