IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK THOMAS ROSSINI,

PETITIONER,

v.

UNITED STATES OF AMERICA,

RESPONDENT.

Case No.  08-mj-692-JMF

USM No. 29590-016

PETITION IN SUPPORT OF A WRIT
OF ERROR *CORAM NOBIS*;
EXHIBITS; ORDER

[28 U.S.C § 1651(A); 18 U.S.C. § 3231]

### PETITION IN SUPPORT OF A WRIT OF ERROR *CORAM NOBIS*

## TABLE OF CONTENTS

**ITEM**                                                                                      **PAGE**

I.          INTRODUCTION.......................................................................................... 1

II.         STATEMENT OF FACTS............................................................................ 2

III.        ARGUMENT ................................................................................................ 4

    A.    The CFAA Restricts Unauthorized Access, Not Use ............................... 4

        1.    The *Brekka* Decision: "Authorization" Under the CFAA is

              Contingent Upon Employer Action .......................................... 4

        2.    This Court Explicitly Adopted the *Brekka* Reasoning and Found

              That the CFAA Proscribes Hacking, Not Misappropriation................... 5

        3.    *United States v. Nosal*: Underscoring Access not Use Restrictions ......... 5

    B.    Under *Brekka*, *Widder*, and *Nosal*, Petitioner's Conduct Did Not Violate

          the CFAA ................................................................................................ 7

    C.    A Writ of Error *Coram Nobis* is Warranted in This Case..................... 8

        1.    A "more usual remedy is not available" to Petitioner.............................. 8

        2.    "Valid reasons exist for not attacking the conviction earlier." ................. 8

        3.    "Adverse consequences exist from the conviction sufficient to

              satisfy the case or controversy requirement of Article III.".................... 9

        4.    The "error is of a fundamental character."............................................. 10

    D.    Based on Similar Facts, Another Court Granted the Requested Relief .............. 11

    E.    There is No Procedural Default Barring the Relief Sought ................................ 12

        1.    Petitioner is "Actually Innocent" of the Charged Offense,

              Therefore Any Procedural Default is Relieved........................................ 12

## TABLE OF CONTENTS
(continued)

**Page**

2. In the Alternative, Any Procedural Default is Relieved Because Petitioner Can Show Both "Cause" and "Prejudice." ............................. 12

   a. Petitioner Can Show "Cause" Because the Arguments That Gave Rise to *Widder* and *Nosal* Were Sufficiently Novel .......... 12

   b. Petitioner Has Established Prejudice because his Conviction is Unsupported by Facts ........................................... 13

**IV.        CONCLUSION** ................................................................. **14**

## TABLE OF AUTHORITIES

## CASES

*Colino v. United States*, SACV 11-0904 DOC, 2012 WL 1198446 (C.D. Cal. Apr. 9, 2012) ...................................................................................................................9

*\*Davis v. United States*, 417 U.S. 333 (1974) .................................................2, 10, 14

*Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322 (N.D. Ga. 2007)............................6

*\*Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)  ...........................................8, 9

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F.Supp.2d 479 (D. Md. 2005) ............................................................................................7

*Koch Indus., Inc. v. Does*, 2:10CV1275DAK, 2011 WL 1775765 (D. Utah May 9, 2011)...........6

*Laughlin v. United States*, 474 F.2d 444 (D.C. Cir. 1972) .......................................................9, 12

*\*Lewis-Burke Associates, LLC v. Widder*, 725 F. Supp. 2d 187 (D.D.C. 2010) .................. *passim*

*\*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009).......................................... *passim*

*Murray v. Carrier*, 477 U.S. 478 (1986).....................................................................................12

*Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F.Supp.2d 373 (S.D.N.Y. 2010).....................6

*\*Peter Norell Jr., v. United States*, SACR 10-46-AG (C.D. Cal. 2013) ............................. *passim*

*Reed v. Ross*, 468 U.S. 1 (1984) ............................................................................................12, 13

*Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962 (D. Ariz. 2008) .................................................6

*Sibron v. New York*, 392 U.S. 40 (1968).......................................................................................9

*Smith v. Murray*, 477 U.S. 527 (1986)...........................................................................................9

*Spencer v. Kemna*, 523 U.S. 1 (1998)............................................................................................9

*United States v. Hansen*, 906 F.Supp. 688 (D.D.C. 1995)................................................. 8, 9, 10

*United States v. McClelland*, 941 F.2d 999 (9th Cir. 1991) ........................................................10

*United States v. Nosal*, 642 F.3d 781 (9th Cir. 2011) ................................................................6, 13

*\*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) ........................................................ *passim*

*United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989) ........................................................9, 10

*United States v. Williams*, 630 F.Supp.2d 28 (D.D.C. 2009).........................................................8

*Wainwright v. Skykes*, 433 U.S. 72 (1977) ................................................................................12

*\*Authorities chiefly relied upon are marked with asterisks\**

## <u>STATUTES</u>

18 U.S.C. § 1030 (a)(2)(B) ........................................................................................ *passim*

28 U.S.C. § 2255.........................................................................................................3, 8

## I.      INTRODUCTION

On December 1, 2008, the government filed a five-count misdemeanor Information charging Mark Thomas Rossini ("Petitioner") with exceeding his authorized access of a government computer in violation of 18 U.S.C. § 1030 (a)(2)(B) -- the Computer Fraud and Abuse Act ("CFAA").  *Information*, Exhibit A at 1-3.  On November 24, 2008, a letter was sent to Petitioner's counsel that set forth the full and complete plea offer.  Upon execution by the Petitioner, this letter became the final Plea Agreement.  *Plea*, Exhibit B.  On December 8, 2008 the Plea was filed in the United States District Court for the District of Columbia.  As explained in the Plea and the Statement of the Offense (*Statement*, Exhibit C), Petitioner admitted that he "exceeded his authorized access" by running searches on computers at the "FBI Headquarters in the District of Columbia."  Exhibit C at 3.  These searches continued when Petitioner relocated to the FBI New York Office in February 2007.  Exhibit C at 3.  There was never any allegation in the Information, Plea or otherwise that Petitioner "hacked" any computer.  *See* Exhibits A, B, C.[1]

On July 28, 2010, after Petitioner's probation terminated on May 13, 2010,[2] this court decided *Lewis-Burke Associates, LLC v. Widder*, 725 F. Supp. 2d 187 (D.D.C. 2010).  In *Widder*, Judge Facciola was confronted with a circuit split regarding the proper interpretation of "without authorization" and "exceeds authorized access" under the CFAA.  In light of the fact that that the D.C. Circuit has yet to address this issue, this court followed the *Brekka* line of cases in interpreting these statutory terms.  *Widder*, 725 F. Supp. 2d at 193 *citing LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009).

---

[1] The Information (Exhibit A), Plea (Exhibit B), and Statement (Exhibit C) are attached hereto for the court's convenience.

[2] *See* Exhibit D, Letter from Probation Office Regarding Termination of Supervision Dated May 13, 2010.

The *Brekka* line of cases, including the most recent decision, *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), held that the CFAA proscribes only "hacking – the circumvention of technological access barriers – not misappropriation." *Nosal*, 676 F.3d at 683. The court made clear in *Nosal* that accessing a computer (with authorization) and then misusing that information, was not, and never was intended to be, a violation of the CFAA. A district court in California recently granted a petition for a writ of error *coram nobis* and vacated a conviction on facts strikingly similar to those in this case.[3] This reasoning should apply to this case.

Allowing a conviction to stand for conduct that does not violate the law amounts to a miscarriage of justice. *Davis v. United States*, 417 U.S. 333, 346 (1974) (A "miscarriage of justice" occurs where the defendant is convicted and punished "for an act that the law does not make criminal."). Petitioner's conviction is based on conduct that does not violate the law he was charged with breaking. Accordingly, for the reasons set forth herein, Petitioner respectfully requests that this court grant his petition for a writ of error *coram nobis*, and vacate his 2008 conviction.

## II.     STATEMENT OF FACTS

On December 1, 2008, the government filed a five count Information against Petitioner. The Information alleges that on five instances between January 2007 and July 2007 Petitioner intentionally and knowingly exceeded his authorized access to a protected computer and by such act obtained information from the Federal Bureau of Investigation ("FBI") that he was allegedly not permitted to receive. Exhibit A at 1-3.

Seven days later, the government filed the Plea and accompanying Statement. *See* Exhibits B, C. The Plea contained the standard waiver of appeal language, explaining that by

---

[3] *See* Peter Norell Jr., v. United States, SACR 10-46-AG (C.D. Cal. 2013) discussed at Section III.D *infra.*

2

executing the agreement, the Petitioner waives the right to appeal his sentence or the manner in which it was determined.[4]  Exhibit B at 5.  The Plea also outlined the consequences of breach, and a waiver of the statute of limitations provision which stated if the conviction was "vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against [Petitioner], notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  Exhibit B at 7.  Finally, the Plea set forth the "full and complete" offer to the Petitioner, (Exhibit B at 1) and stated that no other "agreements, promises, understandings, or representations have been made by the parties or their counsel than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and an Assistant United States Attorney for the District of Columbia."  Exhibit B at 7.  Since signing the Plea, Petitioner completed all of 250 hours of required community service, paid his fine of $5,000.00[5] and successfully completed his twelve month probationary term.  *See* Exhibits D, E.  In addition, and as part of the Plea, Petitioner agreed to, and did in fact resign from his position at the FBI.

---

[4] Note that the Plea did not waive the Petitioner's right to make a collateral attack under 28 U.S.C. §2255.  Instead, the Plea states that the Petitioner, "reserves the right to make a collateral attack upon [his] sentence pursuant to 28 U.S.C. §2255, if new and currently unavailable information becomes known to him."  Exhibit B at 6.
[5] *See* Exhibit E, Summary Debt Balance Sheet; Paid in Full on May 29, 2009.

### III.     ARGUMENT

####     A.     The CFAA Restricts Unauthorized Access, Not Use.

The Petitioner pled guilty to Section 1030 (a)(2)(B) of the CFAA, which makes it a misdemeanor for any individual to "intentionally access [ ] a computer without authorization, or exceed [ ] authorized access" and to thereby obtain "information from any department or agency of the United States."  As set forth below, Petitioner was authorized to access the FBI Automated Case Support System ("ACS") database at all times relevant to this matter, and therefore under the interpretation and application of the CFAA as set forth in the recent case law, the Petitioner did not violate the statute.

#####     1.     The *Brekka* Decision: "Authorization" Under the CFAA is Contingent Upon Employer Action.

In *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (2009), the court found that Brekka, an employee of LVRC, did not access a computer "without authorization" nor did he "exceed his authorized access" in violation of the CFAA when he emailed himself documents from his work computer.  The court explained that as long as Brekka was employed by LVRC, he was "authorized" to access LVRC's computers.  Similarly, Brekka did not "exceed his authorized access" because he was an employee of LVRC and therefore entitled to access the documents.  The court reasoned that the CFAA was designed to "target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to "access and control high technology processes vital to our everyday lives . . .."  *Brekka*, 581 F.3d at 1130-31.  The court relied on the plain meaning of "without authorization" to find that "an employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it."  *Id.* at 1133.  The court rejected the idea that authorization to use a computer ceases when an employee resolves to use

4

the computer contrary to the employer's interest. *Id.* Specifically, "[w]hen an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations. It is the employer's decision to allow or to terminate an employee's authorization to access a computer that determines whether the employee is with or without authorization." *Id.*

      **2.**      **This Court Explicitly Adopted the *Brekka* Reasoning and Found That the CFAA Proscribes Hacking, Not Misappropriation.**

In *Lewis-Burke Associates, LLC v. Widder*, 725 F. Supp. 2d 187 (D.D.C. 2010) the defendant allegedly took confidential and proprietary information with him when he left the firm and solicited clients for a competing business. In dismissing the CFAA claim, this court followed the reasoning of *Brekka* and explained that the "plain meaning" of the CFAA supports the conclusion that "authorization depends on actions taken by the employer." *Widder*, 725 F.Supp. 2d at 193. As long as an employer has not explicitly rescinded the defendant's right to use the computer, the defendant is authorized to access that computer. *Id.* In evaluating a CFAA violation, this court explained that "exceeding authorized access" should not be confused with "exceeding authorized use," because the CFAA protects against hacking, not misappropriation. *Id.* at 194.

      **3.**      ***United States v. Nosal*: Underscoring Access not Use Restrictions.**

On April 10, 2012, the Ninth Circuit issued its *en banc* decision in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), further expounding upon authorization under the CFAA. In *Nosal*, the defendant was indicted under § 1030 for convincing employees of his former firm to access "source lists, names and contact information from a confidential database on the company's

computer" and transfer that information to him for his competitive venture.[6]  *Id.* at 856.  At *en banc* Ninth Circuit review, Mr. Nosal argued that scope of "unauthorized access" included only "someone who's authorized to access only certain data or files but accesses unauthorized data or files – what is colloquially known as 'hacking.'"  *Id.* at 857.  The Ninth Circuit agreed.  In short, "unauthorized access" does not criminalize conduct where the defendant had "permission to access the company database and obtain the information contained within."  *Id.* at 863.  Further, "exceeding authorized access" is limited to employees who are subject to specific access restrictions.  In other words, "without authorization" applies to outside hackers (individuals who have no authorized access to the computer at all) and "exceeds authorized access" applies to inside hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files).[7]  *Id.* at 858.  As the court held, the purpose of the CFAA is to punish hacking, not misappropriation.[8]  *Id.* at 863.

_____

[6] Mr. Nosal moved to dismiss the § 1030 charge against him, and the district court first denied the motion.  Subsequently, the court reconsidered and granted the motion.  On appeal, the original Ninth Circuit panel agreed with the government that the statute proscribed conduct beyond hacking.  *United States v. Nosal*, 642 F.3d 781 (9th Cir. 2011).  However, Mr. Nosal then sought and obtained *en banc* review that reversed the original panel and agreed with Mr. Nosal and the district court that the statute only proscribed hacking.

[7] In *Nosal* the government also attempted to limit this interpretation of "exceeds authorized access only [to] subsection 1030(a)(4)."  *Id.* at 859.  The Ninth Circuit rejected this limitation and held its "definition must apply equally to the rest of the statute," including the provision under which Petitioner now stands convicted – specifically § 1030 (a)(2)(B).

[8] This interpretation follows the path blazed by *Brekka*, 581 F.3d 1127, which has been followed by a growing number of courts that recognize that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation."  *Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962, 965 (D. Ariz. 2008) (internal quotation marks omitted); *see also Koch Indus., Inc. v. Does*, 2:10CV1275DAK, 2011 WL 1775765 (D. Utah May 9, 2011) ("The CFAA addresses only the act of trespassing or breaking into a protected computer system; it does not purport to regulate the various uses to which information may be put."); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F.Supp.2d 373, 385 (S.D.N.Y. 2010) ("The plain language of the CFAA supports a narrow reading.  The CFAA expressly prohibits improper 'access' of computer information.  It does not prohibit misuse or misappropriation."); *Diamond Power Int'l, Inc. v. Davidson*, 540 F.Supp.2d 1322, 1343 (N.D. Ga. 2007) ("[A]

**B.      Under *Brekka*, *Widder*, and *Nosal*, Petitioner's Conduct Did Not Violate the CFAA.**

In light of the definition "without authorization" and "exceeding authorized access" adopted by the courts in *Brekka,* 581 F.3d 1127, *Widder*, 725 F. Supp. 2d 187, and *Nosal*, 676 F.3d 854, it is clear that Petitioner did not violate the CFAA.  It is undisputed that at all times relevant to his offense, Petitioner had access to the FBI Automated Case Support System ("ACS") database and was authorized to open, retrieve, search, download, and print files from it. As indicated in the Statement, at all times relevant to this offense, Petitioner was employed by the FBI as a Supervisory Special Agent.  Exhibit C at 1.  Further, Petitioner was given high-level security clearances, and unfettered access to the FBI's ACS database.  Exhibit C at 1.  Indeed, the ACS database is only accessible by specific FBI employees (Petitioner being one of them) through specific computer terminals in the FBI.  Exhibit C at 2.  None of the facts put forth in the Statement indicate any policy that limited Petitioner's right to access or obtain any information.

In this case, the government never alleged that the Petitioner engaged in "hacking."  As the Statement explains, when Petitioner accessed the database to run searches and download materials "for purely personal purposes," he "exceeded his authorization" because his purpose for doing so was unauthorized.  The government's allegations that Petitioner accessed ACS and used FBI information for "purely personal purposes" is analogous to the fact pattern outlined in *Nosal*, which the court expressly found did not violate the CFAA.  Indeed, *Nosal* explained that interpreting the CFAA in a way that would criminalize this behavior would transform the law

---

violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted."); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda*, 390 F.Supp.2d 479, 499 (D. Md. 2005) ("[T]he CFAA, however, do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access.").

into an expansive misappropriation statute, which would be contrary to congressional intent. *Nosal*, 676 F.3d at 854.

### C.    A Writ of Error *Coram Nobis* is Warranted in This Case.

"Through a writ of error *coram nobis*, the federal judge who imposed a sentence has the discretionary power to set aside an underlying conviction and sentence which, for a valid reason, should never have been entered." *United States v. Hansen*, 906 F.Supp. 688, 692 (D.D.C. 1995). The decision to grant relief pursuant to the writ is committed to the discretion of the court, and the relief must be sought in the court in which the sentence was imposed. *Id.* at 692.  To warrant *coram nobis* relief the Petitioner must establish that: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of a fundamental character. *Id.* at 692-93, *quoting Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).  As discussed below, Petitioner meets each of these four prongs.

### 1.    A "more usual remedy is not available" to Petitioner.

A writ of *coram nobis* is only available when other more traditional remedies are not, and a more usual remedy is not available here.  Direct appeal is not available to the Petitioner, and because he is not in custody for the challenged conviction, he cannot launch a collateral attack under 28 U.S.C. § 2255.  *See United States v. Williams*, 630 F.Supp.2d 28, 30 (D.D.C. 2009). Here, Petitioner has completed his sentence (including community service), paid his fine, and is no longer on probation or supervised release.  *See* Exhibits D, E.  Accordingly, *coram nobis* is the only remedy available to the Petitioner.

### 2.    "Valid reasons exist for not attacking the conviction earlier."

Petitioner has valid reasons for not attacking his conviction earlier.  Courts have established that recent and fully retroactive changes in the law constitute valid reasons for delay.

*See Colino v. United States*, SACV 11-0904 DOC, 2012 WL 1198446 (C.D. Cal. Apr. 9, 2012)

*quoting United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989).  *See also Smith v.

Murray*, 477 U.S. 527, 537 (1986) (review appropriate if claim previously was not reasonably

available); *Laughlin v. United States*, 474 F.2d 444, 451 (D.C. Cir. 1972) (in the D.C. Circuit,

*habeas corpus* standards generally apply to reviewing writs of error *coram nobis*); *Hansen*, 906

F. Supp. at 698 (explaining how until the new [*Hubbard*] decision, the law appeared to be clear,

offering the Petitioner no hope of relief on this theory).

The *Widder* decision was handed down July 2010, and the Ninth Circuit decided *Nosal* in

April 2012.  These seminal cases were decided after Petitioner completed his probationary term.[9]

As soon as Petitioner became aware of the change in the law, he contacted counsel to promptly

pursue the instant petition on his behalf.  On May 19, 2014, Petitioner's counsel contacted the

government and requested its position with respect to the instant petition in light of *Brekka*,

*Widder*, and *Nosal*.  The government communicated its position by email on June 3, 2014.  This

petition was filed only days later.

> **3.      "Adverse consequences exist from the conviction sufficient to
> satisfy the case or controversy requirement of Article III."**

The Supreme Court has recognized a presumption of collateral consequences that applies

to criminal convictions.  *Spencer v. Kemna*, 523 U.S. 1, 8 (1998).  Indeed, it is an "obvious fact

of life that most criminal convictions do in fact entail adverse collateral legal consequences."

*Sibron v. New York*, 392 U.S. 40, 55 (1968).  Other courts have "repeatedly reaffirmed the

presumption that collateral consequences flow from any criminal conviction and that the

government carries the burden of disproving this presumption.  *Walgren*, 885 F.2d at 1421

*quoting Hirabayashi*, 828 F.2d at 606-07 (holding that there is a presumption of adverse

---

[9] *See* Exhibit D.

collateral consequences stemming from a misdemeanor conviction sufficient to satisfy Article III and affirming the district court's granting of *coram nobis* for a 45-year old misdemeanor conviction because "[a]ny judgment of misconduct has consequences for which one may be legally or professionally accountable.").

Petitioner is a former FBI counterterrorism specialist, and despite repeated attempts to obtain continued and permanent employment in this field, he has been unable to do so.  Indeed, potential employers have specifically told Petitioner that this conviction is the reason he cannot be hired.  Accordingly, the government cannot meet its burden of proving that Petitioner faces no collateral consequences as a result of his conviction.

### 4.      The "error is of a fundamental character."

Petitioner has been convicted of conduct that does not violate the charged statute, which is an "error of the most fundamental character."  *See, e.g.*, *U.S. v. Hansen*, 906 F.Supp. 688, 696 (1995) (finding that after the Supreme Court's decision in *Hubbard*, the interpretation of the Act upon which Petitioner's conviction was based was always invalid and so the conviction must be vacated); *United States v. McClelland*, 941 F.2d 999, 1003 (9th Cir. 1991) ("the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature.  If the Government is permitted to sidestep this requirement, the error is a fundamental one and justifies the collateral relief of *coram nobis*."); *Walgren*, 885 F.2d at 1424 ("Walgren's mail fraud conviction rests upon the commission of a fraud that was not a crime.  This conviction constitutes a fundamental error.").  Indeed, when one suffers "conviction and punishment . . . for an act that the law does not make criminal "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice."  *Davis*, 417 U.S. at 346 (internal quotation omitted).  Accordingly, upholding Petitioner's conviction when the underlying conduct did not violate the law would constitute a fundamental error.

**D.      Based on Similar Facts, Another Court Granted the Requested Relief.**

In Peter Norell Jr., v. United States, SACR 10-46-AG (C.D. Cal. 2013), the court issued an order granting a writ of error *coram nobis* and vacating the Petitioner's conviction under the CFAA.  In *Norell*, as in this case, the Petitioner was charged under § 1030 (a)(2)(B) for exceeding authorized access of a government computer, and pled guilty to exceeding his authorization because his "purpose for accessing the information was unauthorized."  Petition for Writ of Error Coram Nobis at 6, Peter H. Norell, Jr. v. United States, SACR 10-46-AG (C.D. Cal. May 20, 2013).  By granting his petition and vacating his sentence, the court acknowledged that Petitioner Norell did not violate the charged statute, and did not exceed his authorized access, because at all times relevant to the charged offense he was employed by the FBI and had authorization to access FBI databases.  When Petitioner Norell accessed the government computer in his office to assist a personal acquaintance's efforts to collect a debt,[10] he did not circumvent any technological access barriers which, in that jurisdiction, (and in this jurisdiction as explained above) is required in order to convict.  Accordingly, the court found that Petitioner Norell was "actually innocent" of the charged offense, and that his conviction should be vacated. Transcript of Proceedings at 34, Peter H. Norell, Jr. v. United States, SACR 10-46-AG (C.D. Cal. Sept. 20, 2013).

The facts underlying the *Norell* petition are strikingly similar to those presented here.  As in *Norell*, the conduct alleged in the Information and admitted by Petitioner in his Plea in this case does not violate the CFAA; Petitioner therefore stands convicted of conduct that did not violate the law.  As in *Norell*, Petitioner's conviction should be vacated.

---

[10] Plea agreement at 4, Peter H. Norell, Jr. v. United States, SACR 10-46-AG (C.D. Cal. Mar. 19, 2010).

**E.      There is No Procedural Default Barring the Relief Sought.**

In the D.C. Circuit, *habeas corpus* standards generally apply to reviewing writs of *coram nobis*. *Laughlin v. United States*, 474 F.2d 444, 451 (D.C. Cir. 1972).  Under these standards, where a defendant fails to raise a claim on direct review, it may be raised only if the defendant can demonstrate "actual innocence," or show both "cause" and "prejudice."  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Skykes*, 433 U.S. 72, 87 (1977).  Procedural default should not bar relief in this case because Petitioner satisfies both tests.

**1.      Petitioner is "Actually Innocent" of the Charged Offense, Therefore Any Procedural Default is Relieved.**

Petitioner never engaged in "hacking" of the FBI computers.  Under *Widder* and *Nosal,* one must "hack" (*i.e.* circumvent technological access barriers) in order to violate the CFAA. The government never alleged Petitioner "hacked" a government computer, and at all times relevant to this matter, Petitioner had authorization to access the information in the ACS database.  Accordingly, Petitioner is "actually innocent" of these charges.

**2.      In the Alternative, Any Procedural Default is Relieved Because Petitioner Can Show Both "Cause" and "Prejudice."**

**a.      Petitioner Can Show "Cause" Because the Arguments That Gave Rise to *Widder* and *Nosal* Were Sufficiently Novel.**

Petitioner can show cause for his failure to raise a claim if that failure to previously raise an argument results from it being so novel that its legal basis was not reasonably available to counsel during direct review.  *Reed v. Ross*, 468 U.S. 1, 16 (1984).  As *Reed* explained:

> If novelty were never a cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far-fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law. Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones.  Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable.

*Id.* at 16 (internal quotations and citation omitted).

The arguments that led to the recent decisions interpreting the CFAA were sufficiently novel such that they were not reasonably available to counsel during direct review. The Information in this matter was filed on December 1, 2008 and the Plea was executed on December 8, 2008. It was only after Petitioner completed his twelve month probation that the District of Columbia court decided *Widder*. Moreover, it was only after Petitioner concluded his probation that the *en banc* Ninth Circuit panel became the first court of appeals in the country to conclude the CFAA was limited to "hacking." *Nosal*, 676 F.3d at 863 (*en banc*) ("We therefore respectfully decline to follow our sister circuits and urge them to reconsider instead.").

Petitioner could not have been on notice of the arguments made in *Widder* before the court handed down its decision in July 2010, and the first time Petitioner could have been on reasonable notice of the novel arguments made in *Nosal* was on April 28, 2011.[11]  Even if Petitioner had read the original panel's decision in *Nosal*, he would have concluded that bringing such a challenge was simply too novel because it had never been raised in the D.C. Circuit. Indeed, from the time Petitioner was charged, through the completion of his probation, the specific challenge to the statute remained novel, and Petitioner's counsel lacked good reason to raise it. There was thus more than ample cause for Petitioner's failure to raise the instant claim earlier.

      **b.**    **Petitioner Has Established Prejudice because his Conviction is Unsupported by Facts.**

Prejudice results when an individual's conviction is unsupported by the facts, and the conviction is allowed to stand. As the Supreme Court has stated, when one suffers "conviction

---

[11] On April 28, 2011 the original Ninth Circuit panel filed its initial decision, which was the first time the novel arguments related to the language of the CFAA were raised. *See United States v. Nosal*, 642 F.3d 781 (9th Cir. 2011).

and punishment . . . for an act that the law does not make criminal "[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346 (internal quotation omitted).  Indeed, upholding Petitioner's conviction for conduct that did not violate the law is an error of the most fundamental nature that results in severe prejudice to Petitioner.  In addition, Petitioner has continued to struggle to obtain employment due to this conviction, and to date has not been offered a permanent position with law enforcement.  Vacating this conviction would at least begin to rectify this severe prejudice.

## IV.        CONCLUSION

Petitioner did not "exceed authorized access" as defined and dictated by *Brekka, Widder* and *Nosal*, because at all times during the relevant period Petitioner had authorization to access the ACS database.  The law in this jurisdiction is clear: the CFAA is not concerned with the purpose behind an individual's decision to access information, or the use to which that individual subsequently puts the information.  Further, this court has expressly stated that the CFAA is a restriction on unauthorized access, not use.  Therefore, the facts to which Petitioner pled guilty in 2008 are not a violation of the law, and Petitioner respectfully requests that this court grant his petition for a writ of error *coram nobis* and vacate his 2008 conviction.

Dated: June 6, 2014                    Respectfully submitted,


                                       BY: _____
                                       Adam S. Hoffinger (D.C. Bar No. 430711)
                                       Lauren A. Navarro (Pending Admission to
                                       D.C. Bar)
                                       MORRISON & FOERSTER LLP
                                       2000 Pennsylvania Ave., N.W.
                                       Suite 6000
                                       Washington, D.C.  20006-1888
                                       Telephone:  202.887.6924
                                       Facsimile:  202.887.0763
                                       AHoffinger@mofo.com

                                       *Counsel for Petitioner*


dc-753579

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014 I, Cathy A. Woods, served a true and correct copy of

the foregoing Petition in Support of a Writ of Error *coram nobis* on the following:

| | |
|---|---|
| Hon. John M. Facciola<br>United States Magistrate Judge<br>U.S. District Court for the District of Columbia<br>333 Constitution Ave NW<br>Washington, D.C., 20001<br>Phone: (202) 354-3130 | *Via ECF* |
| Tejpal S. Chawla<br>Assistant United States Attorney<br>United States Attorneys Office<br>555 4th Street, N.W.<br>Washington, D.C. 20530<br>(202) 514-7499 | *Via ECF* |

By:    */s/  Cathy A. Woods*
          Cathy A. Woods
          MORRISON & FOERSTER LLP
          2000 Pennsylvania Ave., N.W.
          Suite 6000
          Washington, D.C.  20006-1888
          Telephone:   202.887.1547
          Facsimile:    202.887.0763
          CWoods@mofo.com