## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Mark Thomas Rossini,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | |
| | ) | **Case No. 08-mj-692 (JMF)** |
| **United States of America,** | ) | **(closed case)** |
| **Respondent.** | ) | |

### United States Opposition to Defendant's
### Petition for Writ of Error Coram Nobis

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant's petition for a writ of error coram nobis.  As grounds therefore, the United States asserts that petitioner has not demonstrated that an error of the most fundamental character has occurred warranting the grant of coram nobis relief.

### Factual and Procedural Background

On December 1, 2008, the government filed a five-count information alleging that on five different occasions between January and July 2007, petitioner intentionally and knowingly exceeded his authorized access to a protected computer belonging to the Federal Bureau of Investigation ("FBI"), and thereby obtained information from the FBI that he was not entitled to obtain, in violation of 18 U.S.C. § 1030(a)(2)(B) (the Computer Fraud and Abuse Act, or "CFAA").  At his initial appearance on December 8, 2008, petitioner entered a guilty plea to the information pursuant to an agreement with the United States (Exhibit A).[1/] Pursuant to that plea agreement, petitioner agreed that the attached "Statement of Offense" (Exhibit B) fairly and accurately described petitioner's actions.   In pertinent part, the

---

[1/]   In exchange, *inter alia*, for petitioner's guilty plea and agreement to voluntarily resign from his employment with the FBI, the government agreed to allocute at sentencing for a sentence of probation.

Statement of Offense averred that between early January 2007 and July 2008, petitioner was involved in a close personal relationship with a woman named X, who lived in Connecticut. The Statement of Offense further explained:

> At all times relevant to this offense, the defendant was an employee of the FBI, who had been provided high-level security clearances, and was provided access to the FBI's Automated Case Support System (ACS), which contains confidential, law-enforcement sensitive information that relates to historic and on-going criminal investigations initiated by, and supported by, the FBI. The ACS is only accessible by specific FBI employees, and it contains secret and classified information, including FBI reports and the status of investigations. . . . The FBI carefully limits access to the ACS, and ACS is accessible only through specific computer terminals in the FBI, and the system is protected by use of logins and passwords provided to authorized personnel. The FBI requires that all personnel routinely and regularly receive training on the proper use and access of computer information. Specifically, they are instructed and warned that ACS and FBI computer databases can only be used for official business purposes, and that information obtained from these systems cannot be shared with persons outside the FBI without prior approval. *Whenever users access the ACS system they are reminded with a visual banner that warns them "This FBI System is for the sole use of authorized user for official business only."*

(Exhibit B, at 1-2; emphasis supplied.)   The Statement of Offense went on to assert that between January 3, 2007, and July 30, 2007, petitioner made over 40 searches of the ACS for FBI information "that were for purely personal purposes, and not connected to FBI business," and that these searches "exceeded the [petitioner's] authorized use of the ACS system, and were not part of any of his assigned work" (id. at 3).[2]   Petitioner provided some of the information obtained from these unauthorized searches to X, who in turn passed the information along to an attorney for Anthony Pelicano, a defendant who then had a criminal

---

[2]   The Statement of Offense further asserted that by making these searches and reviewing the search results, petitioner "obtained official and confidential information that he was not authorized to obtain" (Exhibit B, at 3).

case pending in the United States District Court for the Central District of California (id. at 4).[3]

On May 14, 2009, this Court sentenced petitioner to a twelve-month period of probation.  Long after that probationary period expired, on June 6, 2014, petitioner submitted to this Court a Petition in Support of a Writ of Error Coram Nobis ("Petition").  In that petition, petitioner argues that his conviction "is based on conduct that does not violate the law he was charged with breaking," and that he is therefore entitled to the vacation of his 2008 conviction (Petition at 2).  As support for this claim, petitioner relies on a line of cases beginning with LVRC  Holdings LLC v. Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009), and including this Court's opinion in Lewis-Burke Associates, LLC v. Widder, 725 F.Supp.2d 187 (D.D.C. 2010).  As petitioner acknowledges, however, "the D.C. Circuit has yet to address" the issue presented in Brekka and Widder (Petition at 1); similarly, the Supreme Court has not yet defined the reach 18 U.S.C. § 1030(a)(2)(B).

## Argument

Petitioner has not demonstrated an error of the most fundamental character warranting coram nobis relief.  In particular, he has not established that controlling law places his conduct beyond the reach of the law under under which he was charged and convicted; at most, petitioner has established the existence of a debatable legal issue as to the appropriate reach of the statute.  Notably, neither the United States Supreme Court nor the United States Court of Appeals for the District of Columbia Circuit, which generate

---

[3]   The Statement of Offense also averred that when confronted by agents from the Department of Justice Office of Inspector General on February 25, 2008, petitioner falsely denied, inter alia, "that he provided any FBI information to outside persons" and also falsely stated that "he did not share any FBI sensitive information with X" (Exhibit B, at 5).   Petitioner was not charged in the information with nor did he plead guilty to any offense relating to the making of these false statements.  See 18 U.S.C. § 2001 (criminalizing the making of false, fictitious, or fraudulent statements "in any matter within the jurisdiction of the executive . . . branch of the Government of the United States).

controlling legal authority in this jurisdiction, have conclusively established that petitioner's conduct does not amount to a violation of 18 U.S.C. § 1030(a)(2)(B).   Finally, petitioner is not suffering from adverse consequences resulting from his plea and does not adequately explain why he did not challenge the reach of the statute before his conviction, and instead agreed at the time of his plea that his conduct amounted to a violation of the law.

A.     Petitioner Has Not Met the Criteria for Coram Nobis Relief

The common-law writ of error coram nobis is an equitable tool that affords a federal judge discretionary power to set aside a conviction and sentence which, for a valid reason, should never have been entered.  United States v. Hansen, 906 F. Supp. 688, 692 (D.D.C. 1995).  A petitioner may attack a federal conviction using the writ of coram nobis even if he is no longer serving a sentence pursuant to that conviction, as long as the petitioner continues to suffer adverse consequences from the conviction.  Id. at 692, 693.  Although the court has broad equitable power under the writ of error coram nobis, relief should only be granted under "circumstances compelling such action to achieve justice."  Id. at 692 (quoting United States v. Morgan, 346 U.S. 502, 511 (1954)).  The bar for attaining relief under coram nobis is high; the writ "is not 'a free pass for attacking criminal judgments long after they have become final,'"  United States v. Faison, 956 F.Supp.2d 267, 270 (D.D.C. 2013)(quoting United States v. Reidl, 496 F.3d 1003, 1004 (9th Cir. 2007)), and coram nobis relief is "rarely granted."  Faison, 956 F.Supp.2d at 269 (quoting Craven v. United States, 26 Fed.Appx. 417, 419 (6th Cir. 2001)).

A petitioner seeking a writ of error coram nobis must satisfy four criteria:

1)      a more usual remedy is not available;

2)      valid reasons exist for not attacking the conviction earlier;

 3)    adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and

 4)    the error is "of the most fundamental character."

Faison, 956 F.Supp.2d at 269; Hansen, 906 F. Supp. at 692-93.  Here, petitioner can only satisfy the first of these four criteria.  Because he has not satisfied the remaining three, and in particular the requirement that he demonstrate error "of the most fundamental character," petitioner is not entitled to relief.

 1.    The government agrees that a more usual remedy is not available.

 Petitioner waived his right to appeal as a condition of his plea, and the government agrees that, because petitioner is no longer serving a sentence, he is ineligible for relief under 28 U.S.C. § 2255 (see Petition at 8).  Thus, no remedy other than the writ of error coram nobis is available as an avenue to attack petitioner's conviction.

 2.    No valid reason exists for not attacking this conviction earlier.

 Petitioner contends (Petition at 8), that he had a valid reason for not attacking his conviction earlier, in that the decisions in Widder and United States v. Nosal, 676 F.3d 854 (9th Cir. 2011), two of the three cases upon which he principally relies, were handed down well after he had completed his probationary term.  He also cites cases which, he claims, establish that "recent and fully retroactive changes in the law constitute valid reasons for delay."  Id. (citing Colino v. United States, SACV 11-0904 DOC, 2012 WL 1198446 (C.D. Cal. Apr. 9, 2012) (quoting United States v. Walgren, 885 F.2d 1417, 1421 (9th Cir. 1989)); Smith v. Murray, 477 U.S. 527, 537 (1986); Laughlin v. United States, 474 F.2d 444, 451 (D.C. Cir. 1972); Hansen, 906 F. Supp. at 698.  His analysis is flawed.

 As a factual matter, both Widder and Nosal, as petitioner elsewhere acknowledges in his petition (at 5-6), adopted the reasoning of the earlier Ninth Circuit decision in Brekka; the

court in <u>Brekka</u>, 581 F.3d at 1133, held that "for purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations."  <u>Brekka</u> was decided in September 2009 – while petitioner was still serving his probationary sentence.  Petitioner does not explain why he did not seek to attack collaterally his conviction as soon as <u>Brekka</u> was decided.  Indeed, petitioner also cites in his pleading (at 6 n.8) to <u>Shamrock Foods Co. v. Gast</u>, 535 F.Supp.2d 962, 965 (D. Ariz. 2008), a pre-<u>Brekka</u> case decided well before petitioner was even charged, in which the court held that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation."[4/]    Thus, authority existed to which petitioner could have cited had he sought to challenge the application of the CFAA to his conduct before he pleaded guilty.[5/]

        Petitioner's analysis is further flawed because the cases he relies upon as support for his contention that the law has "recent[ly] and fully" changed are not controlling in this jurisdiction; indeed, there is no controlling authority that squarely prohibits application of the CFAA to the facts of petitioner's case.  <u>See</u> discussion <u>infra</u>, section 4.  At the time petitioner entered his plea, courts expressed differing opinions as to the proper reach of the CFAA.  Compare <u>Shamrock Foods</u> with <u>Int'l Airport Ctrs., L.L.C. v. Citrin</u>, 440 F.3d 418, 420–21

---

[4/]    Indeed, in <u>Shamrock Foods</u>, 535 F.Supp.2d at 964-965, the court cited to additional pre-<u>Brekka</u> cases that "have opted for a less expansive view, holding that the phrase 'without authorization' generally only reaches conduct by outsiders who do not have permission to access the plaintiff's computer in the first place" (citing <u>Diamond Power Intern., Inc. v. Davidson</u>, Nos. 1:04–CV–0091–RWS–CCH and 1:04–CV–1708–RWS–CCH, 2007 WL 2904119, at *13 (N.D. Ga. Oct. 1, 2007); <u>Brett Senior & Assocs., P.C. v. Fitzgerald</u>, No. 06–1412, 2007 WL 2043377, at *2–4 (E.D. Pa. July 13, 2007); <u>Lockheed Martin Corp. v. Speed</u>, No. 6:05–CV–1580–ORL–31, 2006 WL 2683058, at *5 (M.D. Fla. Aug. 1, 2006); <u>Int'l Ass'n of Machinists and Aerospace Workers v. Werner–Masuda</u>, 390 F.Supp.2d 479, 495 (D. Md. 2005).

[5/]    Had petitioner raised a challenge to the application of the CFAA to his conduct ab initio, the government might well have decided to prosecute petitioner for the uncharged false statements.  Petitioner, instead, acknowledged his guilt and acceded to the entry of a judgment of conviction against him for the CFAA violations.

(7th Cir. 2006) (employee accessed computer "without authorization" when he acted in violation of the duty of loyalty that agency imposes on an employee).   Petitioner could have challenged the application of the CFAA to his conduct before his plea or sentencing, relying on the analysis in cases like Shamrock Foods, just as he challenges it now, relying in addition on Brekka, Widder, and Nosal.   Challenges to a conviction that the petitioner could have, but did not, pursue in the pretrial setting, including a claim that the criminal statute did not prohibit his conduct, are not cognizable on coram nobis review.   Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000).

3.   Petitioner has not demonstrated "adverse consequences" from
his conviction sufficient to warrant coram nobis relief

Petitioner fleetingly discusses the alleged existence of adverse consequences in this case (Petition at 9-10).   He relies upon the "obvious fact of life" that criminal convictions entail adverse collateral consequences, Sibron v. New York, 392 U.S. 40, 55 (1968), and suggests (at 9) that there is a "presumption" of collateral consequences (citing Spencer v. Kemna, 523 U.S. 1, 8 (1998)).   Although "obvious," however, the fact that a variety of collateral consequences understandably flow from a criminal conviction does not automatically entitle every coram nobis petitioner to relief.   See United States v. Dyer, 136 F.3d 417, 429-30 (5th Cir. 1998) ("We have indicated in past cases that we will generally not presume that the collateral consequences of a prior conviction are sufficiently substantial to demonstrate the "compelling circumstances" that warrant *coram nobis* relief.").[6]   As the Seventh Circuit has explained:

---

[6]   In Sibron, the Supreme Court considered whether the petitioners' direct appeals had become moot because they had completed service of sentence and been released.   In that context, the Court concluded that a criminal case is moot only if there is no possibility that any collateral legal consequences will result from the challenged conviction.   Spencer also involved a mootness issue.   There, petitioner sought by way of habeas corpus to invalidate an order revoking his parole, but by the time the matter reached the Court, he had served his entire term of imprisonment.   Thus, the Court was required to consider whether his release caused his habeas petition

7

Considering the[] systemic interests in finality, we have rejected coram nobis petitions except where there is a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm to the petitioner. Thus, the types of disabilities sufficient to justify coram nobis relief can be broken down into three elements. First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past. Second, the disability must arise out of the erroneous conviction. Third, the potential harm to the petitioner must be more than incidental.

United States v. Craig, 907 F.2d 653, 658 (7th Cir. 1990).  Thus, courts have rejected claims of "adverse consequences" even where defendants have identified specific negative effects, where those negative effects were either not sufficiently adverse or did not stem directly from the earlier conviction.  See, e.g., Faison, 956 F.Supp.2d at 270 (fact that a previous sentence makes a defendant eligible for an enhanced sentence for a subsequent conviction does not constitute a sufficiently adverse consequence to justify a writ of coram nobis); Howard v. United States, 962 F.2d 651, (7th Cir. 1992) (rejecting petitioner's claim that he was entitled

---

to be moot.  Citing Sibron, the Court observed in Spencer, 523 U.S. at 7-8, that "[in recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)."  Nevertheless, the Court declined to presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from the petitioner's parole revocation, and required that petitioner actually demonstrate such consequences.

In the coram nobis context, it is understood that the petitioner's release from confinement does not moot his claim – indeed, coram nobis operates precisely when the petitioner has been released from confinement and therefore has no other remedy available to him (such as the writ of habeas corpus).  In a sense, the implicit collateral consequences of the prior conviction are sufficient to give a court equitable jurisdiction to address the coram nobis petition.  The coram nobis petitioner, however, must still demonstrate a reason for the court to act; i.e., a viable injury that justifies the extraordinary relief afforded by the writ - relief which is meant sparingly to be employed.  See United States v. George, 676 F.3d 249, 254 (1st Cir. 2012) ("The Supreme Court has always envisioned coram nobis as strong medicine, not profligately to be dispensed."); Godoski v. United States, 304 F.3d 761, 762 (7th Cir. 2002) (noting that writ of coram nobis is an extraordinary remedy, allowed only where collateral relief is necessary to address an ongoing civil disability resulting from a conviction).

to relief because he could no longer practice law, no longer possess a firearm and might be denied entry or deported from the Cayman Islands).

The only specific "adverse consequence" that petitioner identifies (at 10), is that as a former FBI counterterrorism specialist, he is unable to obtain continued and permanent employment in his field.[7]   Petitioner voluntarily resigned from the FBI as a condition of his plea agreement (see Exhibit B).  His admitted behavior in conducting personal searches of the FBI database, obtaining information from that database, and sharing it with a third party would be an obvious impediment to any effort on his part to obtain future permanent employment in the counterterrorism field, quite separate and apart from the conviction to which that conduct lead.  See United States v. Bush, 888 F.2d 1145, 1149 (7th Cir. 1989) ("Bush is under no legal disability of which a court may relieve him. Any obstacle in the path of his preferred career is of private origin. Although the conviction injures his reputation, which in turn reduces his prospects for high-profile employment, the *facts* would remain no matter what a court did. . . . A writ of error coram nobis does not rewrite history, [and] could not alter circumstances suggesting to prospective employers that Bush is untrustworthy"); Howard, 962 F.2d at 654 (petitioner's inability to practice law did not arise from his conviction but from the voluntarily surrender of his license to practice law sometime after his conviction); but see, e.g., United States v. Foont, 901 F. Supp. 729, 734 (S.D.N.Y. 1995) (statute barring defendant from reentering his profession presented legal consequence allowing defendant to move for coram nobis relief).  Petitioner has not established that he is suffering an adverse consequence resulting solely from his conviction, and is therefore not entitled to coram nobis relief.

---

[7]   Notably, petitioner does not claim that he cannot obtain employment generally, only that he cannot obtain "continued and permanent employment" in the field of counterterrorism (Petition at 10).

4.      Petitioner has not demonstrated that a fundamental error occurred.

The most important criteria to obtaining coram nobis relief is the required showing that a fundamental error has occurred.  United States v. Williams, 630 F.Supp.2d 28, 32 (D.D.C. 2009) ("A showing of fundamental error is undoubtedly required to win coram nobis relief.").  Here, petitioner contends that he is actually innocent of the offense to which he pleaded guilty, because subsequent cases – in particular, Brekka, Widder, and Nosal – make clear that his conduct is beyond the reach of the CFAA.  As noted infra, section 2, however, there is no controlling law in this jurisdiction addressing the issue.  This Court's opinion in Widder, no matter how well-reasoned, is not binding.  See Midlock v. Apple Vacations West, Inc., 406 F.3d 453, 457-58 (7th Cir. 2005) ("A district court decision does not have stare decisis effect; it is not a precedent.  It may be a wise, well-reasoned decision that persuades by the quality of its reasoning, but in that respect it is no different from a persuasive article or treatise."); see also 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").  Similarly, decisions from other courts in other jurisdictions – such as Brekka and Nosal -- may be considered persuasive, but they are not binding.   Moreover, at the time this Court issued its opinion in Widder, there was a circuit split, with the Citrin line of reasoning on one side and cases following Brekka on the other. Widder, 725 F.Supp.2d at 192. The D.C. Circuit has never addressed the issue.  Id.  Nor has the Supreme Court, which has the ultimate authority to define the reach of a federal criminal statute.  See Bailey v. Holley, 530 F.2d 169, 173 -74 (7th Cir. 1976) (observing the "basic principle that the Supreme Court has the final word on the meaning of federal statutes.").  Given the circuit split acknowledged in

Widder and the lack of any governing precedent, the issue of whether the CFAA reaches conduct such as that in which petitioner engaged remains unresolved in this Circuit.

Accordingly, petitioner has not established that this Court was without power to accept his guilty plea to multiple violations of 18 U.S.C. § 1030(a)(2)(B).  See United States v. Kelly, 552 F.3d 824, 829 (D.C. Cir. 2009) ("As a starting point . . . 'when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative then the conviction and the plea … foreclose the collateral attack … [unless] on the face of the record the court had no power to enter the conviction or impose the sentence.'").  Petitioner is not entitled to any relief on this coram nobis petition.

## Conclusion

For all of the foregoing reasons, the government respectfully requests that the petition for writ of error coram nobis be dismissed and petitioner's request for vacation of his conviction be denied.

Respectfully submitted,

RONALD C. MACHEN JR.
D.C. Bar Number 447-889
United States Attorney


_____/s/_____
LESLIE ANN GERARDO
D.C. Bar Number 419-823
Chief, Special Proceedings Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 252-6779

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, this 17th day of September, 2014, I caused a copy of the foregoing opposition to be served via ECF on counsel of record, Adam S. Hoffinger.

_____/s/_____
Leslie Ann Gerardo
Assistant United States Attorney